Next case is also Personalized Media v. Amazon, 2017-14-41, and Mr. Schreiner is due in double duty. Please support. I'm Steve Schreiner. I'm from Goodwin Proctor on behalf of the Patent Owner of Personalized Media Communications. This case involves, this appeal involves the board's refusal to enter substitute claims in a motion to amend on the basis that the substitute claims were allegedly enlarging. The entire issue turns on a question of claim construction that was determined with regard to the original claims and that carried over to the substitute claims. And this erroneous claim construction- The original claims were hardware-directed rather than directed to the operating system. We have to establish that the original construction at least encompasses a hardware version comparison to reprogram. The board found, ultimately found, that the comparison that's called for in the claim is a comparison of software versions. Now, I'd like to walk the court through the sequence of events because I think that it helps set the stage. In the board's institution decision, the board stated that the claim language is broad enough to encompass reprogramming by comparing operating system versions, but the board also allowed for reprogramming based on hardware versions. So taking that construction- Ultimately, they relied on the wear-in clause, right? The wear-in clause and also a little bit of a thought experiment the board engaged in to explain how a software version could indicate or specify a hardware version. I'm happy to address that if Your Honor wants me to address that. So the wear-in clause was added during the prosecution, right? That's correct. The wear-in clause was added just prior to allowance. PMC, it simply states that the specific version of programmable device, in other words, the hardware version, indicates a version of an operating system. And PMC saw that it clarified the claim a little bit, but it didn't change the fundamental feature of the claim or the fundamental operation of the claim, which is that a comparison of hardware versions is what triggers the reprogramming. You'll observe that the examiner did not require similar amendments to the other steps in the claim, such as the receiving step that talks about this reprogramming signal that comes out. So in the ID, the board left it open, that the original claim could cover either reprogramming by comparing software versions or hardware versions. Taking that claim construction, PMC prepared substitute claims that were narrowing. PMC focused just on the one option allowed, one of the two options allowed by the board's initial construction. So PMC wrote claims that called out explicitly and made it indisputable that those substitute claims cover reprogramming based on a comparison of hardware versions. That is undisputed. The board doesn't dispute it. Amazon doesn't dispute it. Don't you lose either way if we found that the claims are not broadening, aren't they invalid as race to the cup? Based on the findings as to the original claim? Right. No. They're not broadening. No, because the board found the board's finding as to the original claim was premised on an incorrect claim construction. So there's no res judicata effect. Once the claim construction is corrected, then that revised claim construction would require a different analysis of the original claim. Now, PMC didn't appeal the original claim here because there was a decision from this court, a section 101 decision, that made that pointless. But we are appealing the refusal to enter the substitute claims, and there are factual and claim construction predicates to that. If I could just touch on the board's construction and how it flies in the face of the intrinsic evidence. First, let's talk about the specification. The specification refers to, excuse me, the preamble, preamble to claim one, refers to a version of a programmable device that includes a signal detector, a memory, and a receiver. There's no reference to software or an operating system there. So version of programmable device is defined in the preamble as hardware. And then in the body of the claim, in the first limitation, which refers back to said specific version of programmable device, that's an antecedent reference to the preamble. So we know in that first limitation that the version of a programmable device is a hardware version. That's the specification, that's the claim language itself. Now, if we look at the specification, nowhere does the specification disclose reprogramming devices based on the comparison of operating system versions. It is absolutely not in there, nowhere. The specification is replete with examples of reprogramming devices based on the comparison of apparatus versions, which is the specification's term for hardware versions. The board's construction is not only contradicted by the specification, but it commits the cardinal sin of reading out every embodiment in the specification corresponding to the claim. So the specification does not support the board's construction. And indeed, the board's construction, when the board looked at the specification, the board used this language repeatedly. The specification does not preclude, this passage does not preclude. We know that that is an incorrect analysis from a legal standpoint in claim construction. It is not what the specification does not preclude or prohibit. The broadest reasonable construction inquiry is focused on what the specification affirmatively teaches. And we know that from the Ingray-Smith international case, and there are several other cases that have made that point very clearly. But isn't it a little different where the limitation you're talking about was added during the prosecution? It might be that the limitation that was added doesn't find any support in the specification, but it seems to me a little different than the situation where the original claim is to be construed in the light of the specification. And it's more likely that the original claim would find support in the specification than an amended claim would find support. First, there is no dispute between the parties that that full limitation, it refers to a version of a programmable device wherein it indicates an operating system. There's no dispute that it finds support in the specification. So that's not in dispute. The board's analysis was focused on what the specification does not preclude. And that is an improper framework. But if it finds support in the specification, then why is the claim construction wrong? Claim construction is wrong because all of the embodiments in the specification, each and every one, disclose reprogramming by comparing hardware versions. There's not a single example of this, of comparing operating system versions to reprogram. And let me make a last point. The board's analysis is really focused on a little bit of a thought experiment. The board says because there's no support for its construction in the specification, you know, the preamble contradicts it. The board says, well, you know, there may be occasions where knowing an operating system version might indicate the hardware version. That's the board's premise. But we know that's not the case, that that factual predicate is incorrect. So let's think about 1987. If I had a machine running MS-DOS 3.0, so I know the operating system version, right? That doesn't tell me the hardware version. I don't know whether the hardware is a PC, a PC Junior, a Commodore 64, etc. So the board's premise, which was, which essentially was the foundation for its construction, is demonstrably false. If the court has no further questions, or I'm happy to entertain further questions. Otherwise, I'll reserve any time for rebuttal. We will save it for you, Mr. Schwanek. Thank you. Mr. Ray, brush off the bench. May it please the court. This is a very, very limited appeal raising the Res Vita Carta problems. They have two major problems before we even get to the claim construction. Number one, we do have the 101 final judgment, and their argument on claim construction is an attempt to make the claims the same as the claim that was invalidated under 101. That's, that's their goal. You mean so as not to enlarge it? As to not to enlarge it, exactly. They want it to be the same. They say it's just like original claim one under their claim construction. But 101 is final and done as a threshold issue, which coincidentally in Comiskey, which raised an earlier argument, that was a great case showing that 101 can be dealt with even when it wasn't the basis of the board's opinion. That was an ex parte case, but the same rule applies here. In addition, they can't, as you just heard, and did not appeal the 103 invalidity, so we know the original claims are invalid under 103. So you would think someone who's arguing for a new claim construction would at least, at least address in their opening brief, how that claim construction would in any way lead to any possible difference in outcome under 101 or 103. Particularly here, when the board made findings under 103, that the prior art shows either hardware or software, and they did not challenge that finding at all. So there's really no place for them to go other than to raise what they think is a error by the board on claim construction. And Judge Dyke, you're absolutely right. In this case, they agreed to a 25 word amendment offered by the examiner, and that amendment is on Appendix 1851, and that was years and years after the specification was written. So it seems their argument is that the amendment they agreed to isn't really consistent with a lot of the spec. That might be true. A lot, much of the spec isn't really fully consistent with that amendment, but the board made a policy to show that this where in clause should be given primacy in the claim construction, and that's because when you file a motion to amend, you are required to show where the amended claim is supported by the spec. And in this case, they had to say that the specification did in fact support the entirety of the amended claim, Claim 53. And the board used that against them to say, look, you pointed to what you thought in the spec supported using the operating system comparison. Now, I want to show also to just simplify this as easily as possible. On page 34 of the red brief, we color coded the amended claim. And regardless of how the claim construction goes, what the board recognized, and which is undeniably true and to which they have no response, is that the amendment in red interrupted the antecedent basis from the yellow. The yellow used to rely upon the green, which is the where in clause. But now that they inserted language to interrupt the antecedent basis as shown on page 34, that is shown pictorially on page 34. So regardless of claim construction, there's still no answer from PMC how this amendment in red did not in fact broaden the claim, severely change it. And they bear the burden of proof on that legal question, if there can be a burden of proof, on showing the appropriateness of the amendment. They bear that burden to show that the claim is supported and that the claim did not add new matter and that the claim was not broader. And AQUA Products explains that those are threshold issues before you even get to patentability. And they couldn't get out of the box because they had no explanation for why this claim was not broader. Even regardless of claim construction. And the board recognized in their opinion on A-74 that the amendment interrupted the antecedent basis. So the board recognized the problem this caused in separating what they agree are two different things, specific version and specific apparatus version. So they lose 101, they have 103. They never showed how these amendments affect 101. They don't show how these amendments affect 103. They don't show how they didn't broaden, regardless of claim construction. And they really have no answer to your question, Judge Dike. Why did they agree then to the 25 word examiner amendment, which made it explicit that the storing information step required storing information about the operating system version? And if there are no questions, I think I've said my piece. Thank you, Mr. Ray. Thank you. Mr. Schreiner has some time left. You'll note that my friend, Mr. Ray, really runs away from the claim construction issue that the board established that is at the core of its decision not to enter the substitute claims. He didn't make any, he didn't point out anywhere in the specification where it was the operating system versions. He didn't dispute that the specification discloses reprogramming by comparing hardware versions. As to the Section 101 issue, the claims are different. Substitute Claim 53 adds significant language to it that is narrowing vis-a-vis the original Claim 1, whether that claim is construed according to the board's erroneous construction or the construction the PMC advocates. For example, the claim refers in the second step, there's language adding that the signal that causes this reprogramming is received from a transmission station or transmitter station. That is clearly narrowing. There's other language, and a specific apparatus version, and then going down to the comparison step, comparing the apparatus version to the apparatus version sent in the control signal. So the claims are narrowing, and when my friend, Mr. Ray, tries to argue that the claims are really not narrowing, that they're broadening, they're only broadening if you apply the board's original claim construction. The board's original claims, the board's claim construction is that these claims require a comparison of software versions. That's what the board says. Then if you look at the substitute claims, which indisputably require a comparison of software versions, then the only way the substitute claims are broadening is because they don't recite comparing operating system versions pursuant to the board's erroneous claim construction. So the argument made that the substitute claims are really broadening is simply a reference to the claim construction problem that underlies this whole exercise. As to Section 103 being an alternative basis, there's additional language in Claim 53. The board didn't address Section 103 with regard to the substitute claim. The board made its decision solely on the threshold showing that the patent owner must show the claims are not broadening. The board didn't get to Section 103. So with the additional language, such as receiving from a transmitter station, that's a factual determination. The board didn't address it. And with all due respect, this court shouldn't substitute a factual finding that the board never made. As to the, I'd like to add one more point to the Section 101 decision. There was a reference to res judicata, and I believe that's a reference to the 101 decision that was affirmed by this court. However, if you look at the reasoning of Judge Andrews in that case, he referred to the original claim, one, as checking to see if a new version of operating systems is required, and if so, then updating the operating system. So his framework, for 101 purposes, was based on a comparison of operating system versions. That is a different issue than presented here if this court assigns a proper claim construction to the determination. How does comparing hardware systems make it any more eligible? It's still just a comparison and then updating it. Because it was not conventional, routine, or well understood at the time, not remotely. Remember, the best prior art, it's still, I don't think you're reading our recent case all right. Just because an abstract idea is not conventional or routine is not necessarily enough to make it patent eligible. It seems to me that what Alice in those cases say is once you identify the abstract idea, the claims add enough more that's not conventional routine. But you can't just say the comparison step, which is an abstract idea, is not routine or conventional. And so what, in addition to comparing the hardware, is not routine? All the equipment here is routine and conventional, isn't it? I believe under the case law, the inquiry under step two is whether the operations called for by the claim are conventional or routine. The operations that are called for by the substitute claim do provide for comparing hardware versions. So you think if it's a, sorry, I know he's out of time. Can I just ask one more question? Yeah. If it's an abstract idea, you think that if it's a non-routine or conventional abstract idea, then that's patent eligible. Isn't that inconsistent with Ariosa and a bunch of other cases from this court and the Supreme Court where we recognize that the specific method is new? Ariosa, I think it's a revolutionary method, but it's nonetheless abstract and nothing apart from that abstract idea was routine and conventional. Even under the, disregarding the recent cases, we know from Alice that the inquiry under step two is to look at the limitations individually and as an ordered combination to determine whether they add something more in order to transform the claim into a patent eligible application. And the inquiry that's usually taken is whether those operations are routine, conventional. The question can't be whether the abstract idea itself is routine and conventional. Oh, no, no. I'm talking about, okay, let's, for the sake of this discussion, let's assume that the claim is directed to an abstract idea, a substitute claim 53. The, we still have to go to step two and evaluate whether something more has been added to claim 53, added on top of the abstract idea so that it makes it, takes it into the realm of a patentable application of an abstract idea. Remember, the board never made any findings on section 101, made no conclusions of law, made no underlying factual findings. But I thought you said the something more was it, was now comparing hardware systems versus just operating systems. The, the, so that's the case. That's still an abstract idea. That can't be the something more. Certainly, if you sweep all of the claim language into the abstract idea, then what's left in step two, there's nothing left in step two to evaluate. What Amazon pays. If all the claim is, is an abstract idea and do it on computer equipment, then that's exactly what it is, is there isn't much left for step two to do because computer equipment is routine and conventional. Nobody at the, at the board has, has made a, the board has not made a finding on what abstract idea lurks under this claim. Amazon has argued that the abstract idea. But that's a legal question. Is, I totally agree, is updating operating instructions. Thank you, counsel. I think we have the case. We'll take it under review.